Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7920 | **DATE** | 5/13/2002 |
| **CASE TITLE** | Castano vs. Sternes | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The petitioner's petition for writ of habeas corpus is denied. Enter Memorandum Opinion and Order. Any pending motion in this case is terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 5 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 14 2002 | |
| | Notified counsel by telephone. | | date docketed | 30 |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | 5/13/2002 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES** ex rel. **ALEXANDER CASTANO**, <br><br> Petitioner, <br><br> v. <br><br> **JERRY STERNES**, Warden, <br><br> Respondent. | No. 00 C 7920 <br><br> DOCKETED <br><br> MAY 1 4 2002 |

### MEMORANDUM OPINION AND ORDER

Alexander Castano is guilty. In 1997, he was caught with 181 kilograms of cocaine. He admits the evidence of possession was "nearly incontrovertible" and "overwhelming." He was convicted at a bench trial in Illinois state court of possession with intent to deliver. He was sentenced to 45 years in prison. He petitions for a writ of habeas corpus under 28 U.S.C. § 2254 (federal habeas corpus for state prisoners), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Arguing pro se, he contends that (1) he was denied effective assistance of counsel when his trial counsel dropped a potentially winning argument for suppression of the evidence, (2) probable cause was lacking for his arrest, and (3) he was denied effective assistance of counsel by his trial counsel's failure to protect his Fourth Amendments rights. Claims (1) and (3) are the same point. I appointed counsel for Mr. Castano and allowed him an opportunity to file an additional



response. After careful consideration, I deny his petition for habeas relief.

The facts of Mr. Castano's case, taken from the state court proceedings, are as follows.[1] In January 1997, DEA Special Agent Nikko Eliopoulos received information about a cocaine delivery to the residence of a Ms. Cecilia Arango in Gurnee (Lake County), Illinois, from a reliable confidential informant whose previous information had led to several drug arrests and convictions. The informant told the DEA that Ms. Arango had several sources of supply, including Mr. Castano. About three days before Mr. Castano's arrest, the informant told the DEA that two kilograms of cocaine were to be delivered to Ms. Arango's residence on February 12, 1997, but did not say who would deliver them or how. A search warrant was issued for the Arango residence, based in part on plastic baggies with cocaine residue that were found in the garbage of the Arango house. The residence was put under surveillance. On February 12, 1997, at around 7 a.m., an Hispanic male, later identified as Jose Quiroz, entered the Arango garage. The DEA said the license plate on the car belonged to a different vehicle. At 11:45 a.m., a gold Nissan Maxima driven by an Hispanic male, later identified as Mr. Castano, arrived at the Arango residence, and the driver entered the

---

[1] I must presume that the factual findings of the state court are correct unless Mr. Castano rebuts them with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). For the purposes of this motion, Mr. Castano challenges some of the facts as set forth by the state court. I discuss this below.

-2-

house; he then emerged, got into the Maxima, and drove off, followed by agents, to an apartment complex. The agents did not see which apartment he entered, but shortly thereafter he was observed at the complex where Mr. Castano was later found to have rented an apartment, and was seen carrying a black canvas bag that he put into the back seat of the Maxima.

Meanwhile, agents had effected a traffic stop (later determined to be illegal) on a minivan leaving the Arango residence. It was driven by Jose Quiroz, who had a suspended license; Ms. Arango was a passenger. The van was searched and a kilogram of cocaine was found in a plastic drawer under the driver's seat. This discovery was transmitted to the officers watching the driver of the Maxima, who had returned to the Arango residence, where another vehicle with three persons was waiting in the driveway. All were detained, including Mr. Castano; the others were later released. Officer William Dial observed the black satchel in the back seat of the Maxima--he said it was open--and he found the cocaine in it. Mr. Castano was arrested. He was found to be carrying about $3,000 in cash. Based on averments in an affidavit I shall discuss below, DEA Agent Eliopoulos then obtained a search warrant for Mr. Castano's apartment and a garage, both located in the apartment complex to which Mr. Castano had been followed. Mr. Castano admitted to the DEA that he had been renting the apartment for about a month, and the managers of the apartment complex told the authorities that the same

-3-

person who rented the apartment also rented the garage. Mr. Castano says that the apartment was in fact rented by somebody else. The apartment and garage contained 181 kilograms of cocaine, $185,658 in cash, and a Columbian passport issued in Mr. Castano's name. Mr. Castano's left thumb print was recovered from one of the plastic bags containing a kilogram of cocaine. The combination for the garage lock was found in the apartment, and appliance boxes in the garage containing the cocaine matched appliances found in the apartment.

The state court denied Mr. Castano's motion to quash the search warrant and to suppress evidence. He was convicted at a bench trial and sentenced to 45 years imprisonment and given a fine of $36 million. Mr. Castano then retained new counsel and appealed. He also filed a state post-conviction petition, which was also denied, alleging that his original trial counsel had provided constitutionally ineffective assistance. He appealed that denial, and the Illinois Appellate Court considered the two appeals together, denying them on July 13, 2000. Mr. Castano was denied leave to appeal to the Illinois Supreme Court, and this § 2254 petition followed.

The state does not argue that Mr. Castano has procedurally defaulted any of his claims, so I go to the merits. Under AEDPA, I may not grant Mr. Castano's petition with respect to any matter that the state courts have adjudicated on the merits unless its

-4-

determinations were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2). With regard to the law governing § 2254(d)(1), "contrary to" established Supreme Court precedent means "'substantially different from the relevant precedent. . . .'" *Boss v. Pierce*, 263 F.3d 734, 739 (7th Cir. 2001), *e.g.*, "applying a rule that contradicts the governing law . . . [or making] a decision that involves a set of facts materially indistinguishable from a Supreme Court case that arrives at a different result." *Id.* (citing *Williams v. Taylor*, 529 U.S. 362 (2000)). The criterion for determining the "reasonableness" of an application of Supreme Court law is "whether the determination is at least minimally consistent with the facts and circumstances of the case." *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997). The state court's conclusion stands if it is "one of several equally plausible outcomes." *See Hall v. Washington*, 106 F.3d 742, 748-49 (7th Cir. 1997). With regard to the law governing § 2254(d)(2), I may not gainsay a state court's factual determinations unless Mr. Castano shows that they were wrong by clear and convincing evidence. *Id.* § 2254(e)(1).

The issue here, the existence of probable cause in a certain set of facts, is a mixed question of law and fact, *Ornelas v. United*

*States*, 517 U.S. 690, 696-97 (1996) (not a habeas context), "traditionally review[ed] de novo," but in a habeas case under AEDPA, "with a grant of deference to any reasonable state court decision." *Schaff v. Snyder*, 190 F.3d 513, 522 (7th Cir. 1999). "'The statute commands deference to the state court's judgment by using the word "unreasonable," which is stronger than "erroneous" and maybe stronger than "clearly erroneous."'" *Id.* at 523 (quoting *Hennon*, 109 F.3d at 334). Here too, a "reasonable" determination is one that is "at least minimally consistent with the facts and circumstances of the case," even if it is "'not well reasoned or fully reasoned,'" *id.* (citing *Hennon*, 109 F.3d at 335), or even "if it is one of several equally plausible outcomes," *id.* (citing *Hall*, 106 F.3d at 748)). It is only if "the determination is "at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary," that the writ must issue. *Id.* (citing *Hall*, 106 F.3d at 749).

Because the evidence that Mr. Castano possessed an enormous quantity of cocaine was "nearly incontrovertible" and "overwhelming," as he himself admits, his only hope was to have it suppressed. Normally, a Fourth Amendment claim is not cognizable on federal habeas review if the state afforded the defendant a "full and fair" opportunity to litigate those claims. *Stone v. Powell*, 428 U.S. 465, 494-495 (1976), which Mr. Castano had here. He explained the factual basis of his claim to a state court and argued that

-6-

these facts constituted a Fourth Amendment violation, *Pierson v. O'Leary*, 959 F.2d 1385, 1391 (7th Cir. 1992), and the state court "carefully and thoroughly analyzed the facts and applied the proper constitutional case law to the facts," *id.*; *see People v. Castano*, Nos. 2-97-0931 and 2-98-1698, at 6-8. Therefore he may not directly challenge the existence of probable cause for his arrest or the search of his apartment and garage in this motion. *See Terry v. Martin*, 120 F.3d 661, 663 (7th Cir. 1997).

However, the United States Supreme Court has held that *Stone* does not preclude me from considering an ineffective assistance of counsel claim based on the violation of Fourth Amendment rights, *see Kimmelman v. Morrison*, 477 U.S. 365, 374-75 (1986) (*invoked subsequently to AEDPA in Beaven v. McBride*, No. 97-1668, 1997 WL 413493, at *1 (7th Cir. July 15, 1997)). In the very able brief filed by his appointed counsel for this petition, Mr. Castano contends that he had a good Fourth Amendment suppression argument under *Franks v. Delaware*, 438 U.S. 154 (1978), which was his only real chance at freedom, and it was therefore a violation of the Sixth Amendment for his attorney not to persist in the attempt. Mr. Castano argues that if his counsel had not committed an error of constitutional magnitude, he would have succeeded in having the evidence suppressed at the *Franks* hearing.

To prevail on a claim of ineffective assistance of counsel, Mr. Castano must demonstrate that: (1) his counsel's performance was so

deficient as to fall below an objective standard of reasonableness under "prevailing professional norms" and (2) the deficient performance so prejudiced the defense as to deny the defendant a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Counsel's performance is presumed to be adequate, although the presumption may be rebutted. *Id.* at 688-89. Mr. Castano also must overcome the strong presumption that "the challenged action might be considered sound trial strategy." *Id.* at 689. Finally, even if not professionally reasonable, a decision by counsel "does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

*Franks* held that a search warrant based on perjury is void unless probable cause can be established from the valid and truthful portion of the affidavit supporting the warrant application. 438 U.S. at 171-72. Mr. Castano says that there were several false statements in the affidavit supporting the warrant that led to the discovery of the 181 kilograms of cocaine in his apartment and a garage. The state court found that, even with the material that Mr. Castano alleges to be false omitted from the affidavit, there was enough true material left for probable cause for a warrant, *Castano*, Nos. 2-97-931 and 2-98-1658, at 11, and so Mr. Castano was not entitled to win a *Franks* motion. As noted above, this is a mixed question of fact and law. I therefore assess deferentially whether there would be probable cause if the challenged statements were

-8-

omitted and the omitted statements included.

Mr. Castano argues that the warrant affidavit contained the following false or misleading material statements:[2]

Mr. Castano says that DEA Agent Eliopoulos admitted at the suppression hearing that Mr. Castano's name was not, as stated on the warrant affidavit, received from an informant within 72 hours of his arrest as a drug source for Ms. Arango. This, Mr. Castano says, raises doubts about how fresh the information was. Referring me to *Rosencranz v. United States*, 356 F.2d 310, 315-316 (1st Cir. 1966) (cited with approval in *United States v. Lamon*, 930 F.2d 1183, 1189 (7th Cir. 1991), he argues that without the time specification, the information might have been too remote for probable cause. However, *Rosencranz* also warned that "affidavits should be construed in a commonsense manner and that doubtful cases should be resolved in favor of the warrant affidavit," 356 F.2d at 316, and the context of the warrant specifically the statement that the deal was expected on a certain date close to the time of the affidavit, militates against stale information.

The warrant affidavit stated that Mr. Castano was observed arriving and entering Ms. Arango's residence, from which he departed

---

[2] Mr. Castano requests that the state be ordered to produce the full state court record, including the trial transcripts and transcripts from the suppression hearing. He argues that the transcripts are necessary to evaluate the falsehoods in Agent Eliopolous' testimony. However, production of the transcripts is unnecessary because, for the purpose of this motion, I accept Mr. Castano's allegations of falsity as true.

in a matter of minutes. But she lived in a multiple unit complex, and he states that he was observed entering and leaving that complex, not her particular unit. Mr. Castano says that police did not know which apartment he had entered, and lied when they stated that they did. Mr. Castano argues that this tends to break the connection between the two of them. *See United States v. Kyllo*, 37 F.3d 526, 529 (9th Cir. 1994) ("Omissions [in warrant affidavit] were material since these facts would have substantially undermined any inference that defendant was involved with drugs because his wife was."); *Sibron v. New York*, 392 U.S. 40, 62-63 (1968) (mere association and conversation with known traffickers in narcotics insufficient for probable cause). The warrant affidavit also omitted to state that on his visit to the complex, Mr. Castano was observed carrying nothing, that is, that he was empty-handed, and so was less likely to have been delivering drugs to Ms. Arango; and finally, the state conceded that Ms. Arango left her home "some time" after Mr. Castano visited the complex, and not "immediately" thereafter, as the warrant affidavit falsely said. This makes it less likely that his visit and her departure were connected. The warrant affidavit stated that the packages of cocaine found in Ms. Arango's minivan were similar to the one found in Mr. Castano's satchel. He denies this, which further weakens the connection between Ms. Arango and himself. These points are valid taken in themselves, but the state's basis for probable cause did not rest

on mere association alone, as I will explain.

Finally, Mr. Castano argues that the original typescript of the warrant affidavit did not state that the he was the was the suspected recipient of the anticipated delivery of cocaine. Mr. Castano says that Agent Eliopoulos falsely approved the handwritten inscription of the name Alejandro Castano on the typed warrant, but later admitted at the suppression hearing that all he knew was that the drugs were to be delivered to Ms. Arango's (not-further-identified) source. I need not decide here whether that statement was false; indeed, I assume for the sake of deciding this motion that Mr. Castano's charge is true.

The question for a *Franks* hearing is whether, when all the allegedly false or misleading information is excised from the warrant affidavit, enough remains to conclude there is probable cause for a search. The alleged false statement must be necessary to the finding of probable cause. *United States v. McClellan*, 165 F.3d 535, 545 (7th Cir. 1999). Even when directly considering a *Franks* motion, I must "presume that the affidavit supporting the search warrant is valid." *United States v. Hunter*, 86 F.3d 679, 682 (7th Cir. 1996). And on collateral habeas review, as discussed above, my treatment of the state court's application of law to the facts must be deferential. The state court concluded that enough would indeed remain in the warrant application for a finding of probable cause. The state court did not explain its reasoning.

However, this conclusion was correct even if I exclude every fact that Mr. Castano disputes, and include the facts that he says were misleadingly omitted.

Mr. Castano does not dispute that, even after excising the allegedly false statements: (1) he was arrested with a kilogram of cocaine in his car and more than $3000 on his person, which was (2) discovered in a search that he does not challenge here; (3) he told the DEA he had rented the apartment that was searched; (4) he was observed coming from the apartment complex where that unit was located carrying a black satchel in between visits to the Arango house on the day that the police had been informed a drug deal was to occur (whether or not he was tied to it); (5) the management of the apartment complex told the authorities (whether or not this turned out to be true) that the same person who rented his apartment rented the garage where the bulk of the drugs were found. That is more than enough for probable cause, see *United States v. Lamon*, 930 F.2d 1183, 1190 (7th Cir. 1991) (seizure of drugs from defendant's person and knowledge that drug dealers store drugs and money at permanent residence provided probable cause for search of residence); *United States v. Edwards*, 885 F.2d 377, 387-88 (7th Cir. 1989) (significant amount of cash found in defendant's car and drugs discovered in search of suspected co-conspirator's car provided probable cause to search defendant's home), and so a suppression based on a *Franks* hearing would have been unjustified.

Mr. Castano's ineffective assistance of counsel argument therefore fails. "It is not deficient performance to fail to raise an argument with no real chance of success or where the objection would have been properly overruled if it had been made." *Hough v. Anderson*, 272 F.3d 878, 898 (7th Cir. 2001) (quoting *Williams v. Carter*, 85 F. Supp. 2d 837, 840 (N.D. Ill. 1999) (Bucklo, J.). Therefore it was not deficient performance for Mr. Castano's counsel to fail to pursue this *Franks* motion. Mr. Castano was not prejudiced by the decision to abandon the *Franks* motion because nothing indicates that the motion would have been granted had it been pursued. The state court applied the correct standard and reached a reasonable and correct conclusion, so Mr. Castano's petition for habeas relief is therefore DENIED.

ENTER ORDER:

*Elaine L Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: May 13, 2002